IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| United Financial Casualty Company, | ) | Civil Action No. 4:08-4014-TLW |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Cephus Lewis, Jerome Durant, Ernie Cokely and | ) | |
| Cynthia Rucker, as Personal Representative of | ) | |
| Dawnte Williams, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is currently before the Court on (1) the motion for summary judgment filed by Defendant Ernie Cokley (hereinafter "Defendant Cokley") (Doc. # 65); (2) the motion for summary judgment filed by Defendant Cephus Lewis[1] (hereinafter "Defendant Lewis") (Doc. # 69); (3) the motion for summary judgment filed by Plaintiff United Financial Casualty Company (hereinafter

---

[1] The Court notes that the Clerk of Court entered default as to Defendant Cephus Lewis on January 13, 2009. (Doc. # 15). A motion to set aside default was filed on September 8, 2009. (Doc. # 43). A response in opposition to this motion was filed on September 29, 2009. (Doc. # 53). The Court has considered Defendant Lewis's motion for relief from entry of default and enlargement of time to answer. Rule 55 of the Federal Rules of Civil Procedure provides that a court may, "for good cause," set aside an entry of default. Fed.R.Civ.P. 55(c). "The disposition of motions made under Rule [ ] 55(c) ... is a matter which lies largely within the discretion of the trial judge . . ." Payne ex rel. Estate of Calzada v. Brake, 439 F.3d 198, 205 (4th Cir. 2006). When deciding whether to set aside an entry of default, a district court should consider whether the moving party has a meritorious defense, whether it acts with reasonable promptness, the personal responsibility of the defaulting party, the prejudice to the party, whether there is a history of dilatory action, and the availability of sanctions less drastic. Id. Having taken these considerations into account and finding good cause, the Court finds it appropriate to **GRANT** Defendant Lewis' motion (Doc. # 43) and set aside the entry of default. Accordingly, the Court finds it appropriate to consider Defendant Lewis' motion for summary judgment.

1

"Plaintiff" or "United Financial") (Doc. # 70); and the motion for submission of certified question filed by Defendant Cokely (Doc. # 79).[2] Plaintiff filed the instant declaratory judgment action on December 12, 2008. (Doc. # 1). On January 11, 2010, Defendant Cokley filed a motion for summary judgment with a supporting memorandum. (Doc. # 65). On February 1, 2010, Defendant Lewis filed a motion for summary judgment with supporting memorandum. (Doc. # 69). On February 4, 2010, Plaintiff filed a motion for summary judgment with a memorandum in support of its motion for summary judgment and in opposition to Defendant Cokley's motion for summary judgment. (Doc. # 70). Plaintiff filed a response in opposition to Defendant Lewis' motion for summary judgment on February 18, 2010. (Doc. # 71). On March 4, 2010, Defendant Lewis filed a response in opposition to Plaintiff's motion for summary judgment. (Doc. # 75). On March 4, 2010, Defendant Ernie Cokely filed a response in opposition to Plaintiff's motion for summary judgment as well as a motion for submission of a certified question. (Docs. # 78 & # 79). On March 22, 2010, Plaintiff filed a response in opposition to Defendant Cokley's motion for submission of a certified question. (Doc. # 81). The Court heard oral argument on these motions from all counsel

---

[2]The Court has considered Defendant Cokley's motion for submission of certified question(s) to the South Carolina Supreme Court. South Carolina Appellate Court Rule 244 entitled <u>Certification of Questions of Law</u> provides as follows:
    (a)    Scope of Certification. The Supreme Court in its discretion may answer questions of law certified to it by any federal court of the United States or the highest appellate court or an intermediate appellate court of any other state, when requested by the certifying court if there are involved in any proceeding before that court questions of law of this state which may be determinative of the cause then pending in the certifying court when it appears to the certifying court there is no controlling precedent in the decisions of the Supreme Court.

In light of the South Carolina Supreme Court precedent of <u>Bovain v. Canal Insurance et al</u>, 678 S.E.2d 422 (S.C. 2009), this Court is not persuaded that certification is appropriate in this case. Accordingly, Defendant Cokley's motion for submission of certified question (Doc. # 79) is **DENIED**.

on May 17, 2010. For the reasons set forth in this Order, Defendants' motions for summary judgment are granted as outlined herein.

## Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment should be granted when the pleadings, responses to discovery, and the record reveal that "there is no genuine issue as to any material fact and . . .the moving party is entitled to a judgment as a matter of law." Charbonnages de France v. Smith, 597 F.2d 406 (4th Cir. 1979). Once the movant has met its burden, the non-moving party must come forward with specific facts demonstrating a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). However, the party opposing summary judgment may not rest upon mere allegations or denials and, in any event, a "mere scintilla of evidence" is insufficient to overcome summary judgment. Id. at 249-50.

When considering summary judgment motions, courts must view the facts and the inferences therefrom in the light most favorable to the party opposing the motion. Id. at 255; Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990); Cole v. Cole, 633 F.2d 1083 (4th Cir. 1980). Indeed, summary judgment is only proper "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there [being] no genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986) (internal quotations omitted).

## Facts

This is a declaratory judgment action filed by Plaintiff seeking a declaration as to the amount of insurance available to Defendants. United Financial issued a Commercial Automobile Liability

3

Policy ("the Policy") to Defendant Lewis, with effective dates of August 4, 2007 to August 4, 2008. (Complaint, Exhibit A.) The Policy provided for bodily injury liability limits of $25,000 per person and $50,000 per accident. Id.

Defendant Lewis owned and operated a logging and log hauling business called Hugo Logging.[3] In Februay of 2008, Defendant Lewis was logging two large tracts of land for timber brokers Dixie Wood and Tidewater. The Dixie Wood tract was located in Marion County. The tract of land for Tidewater was located off Highway 378 in Marion and Horry Counties. Both tracts were completely forested with a mix of hardwood and pine trees. On February 29, 2008, Defendant Durant was driving one of Defendant Lewis' vehicles when an accident ("the underlying accident") occurred that caused bodily injury to Defendant Cokely and the death of Dawnte Williams.[4] Defendant Cokely has filed a tort action in Williamsburg County, South Carolina against, inter alia, Defendants Lewis and Durant, alleging negligence. In the instant suit, the parties dispute whether the Policy's liability limits of $25,000/$50,000 comply with South Carolina law or whether the Policy must be reformed to provide $750,000 in liability coverage.

---

[3]It appears that Defendant Lewis' business depends on timber brokers. He does not harvest his own tracts of land, but is instead hired by the timber brokers. His crews cut timber, and his drivers then haul the timber to the mill for the brokers. He is paid by the timber brokers.

[4]The underlying accident occurred at about 5:05 a.m. on February 29, 2008. At that time, Defendant Cokely was traveling east on U.S. Highway 378 towards Kingsburg, South Carolina, in a 1999 Nissan automobile. A 1993 Peterbilt Truck and an attached empty log hauling trailer were parked on the southern side of Highway 378 facing west. This truck was owned by Defendant Lewis and operated by Defendant Durant. Allegedly, Defendant Durant, who was leaving his house to go to work to haul timber, backed the unloaded truck and trailer onto Highway 378 into Defendant Cokely's path of travel. It is asserted that Defendant Cokely's automobile struck the right rear portion of the unloaded trailer attached to the truck, resulting in serious injury to Defendant Cokely and the death of his girlfriend who was traveling with him as a passenger.

## Law/Analysis

As an initial matter, the Court will briefly address whether Defendant Lewis is a motor carrier who must have liability insurance with limits no less than $ 750,000. South Carolina law contains both statutes and regulations governing "motor carriers." One Regulation relevant to this case is Regulation 38-414, which provides for heightened insurance requirements for certain "motor carriers" for hire as part of a group of Economic Regulations. This Regulation was throughly addressed by the South Carolina Supreme Court in the case of Bovain v. Canal Insurance et al, 678 S.E.2d 422 (S.C. 2009). The Bovain Court noted as follows:

> Specifically, Regulation 38-414 provides that "[i]nsurance policies and surety bonds for bodily injury and property damage will have limits of liability not less than" $750,000 per incident for trucks weighing 10,0000 or more pounds GVWR that carry non-hazardous freight. 23A S.C.Code Ann. Regs. 38-414 (Supp.2008). This regulation applies "to any person ... or corporation which is ... engaged as a motor carrier for hire within the State of South Carolina" unless they are otherwise exempted. 23A S.C.Code Ann. Regs. 38-401 (Supp.2008).
> A "carrier," in the legal sense, refers to one who undertakes to transport persons or property from place to place. Huckabee Transp. Corp. v. W. Assurance Co._,_ 238 S.C. 565, 121 S.E.2d 105 (1961); Windham v. Pace_,_ 192 S.C. 271, 6 S.E.2d 270 (1939). The term "motor carrier" includes " both a common carrier by motor vehicle and a contract carrier by motor vehicle." 23A S.C.Code Ann. Regs. 38-402(8) (Supp.2008).
> Statutory law also controls motor carriers. Section 58-23-20 provides: "No corporation or person ... may operate a motor vehicle for the transportation of persons or property *for compensation* on an improved public highway in this State" without complying with the applicable statutory provisions and the regulations and authority of the Public Service Commission. S.C.Code Ann. § 58-23-20 (Supp.2008) (emphasis added).
> "The term 'motor vehicle carrier' [as used in the portion of the Code concerning the regulation of motor vehicles for compensation] means every corporation or person ... owning, controlling, operating or managing any motor propelled vehicle ... used in the business of transporting persons or property *for compensation* over any improved public highway in this State [.]" S.C.Code Ann. § 58-23-10(4) (1977) (emphasis added).
> The phrase "for compensation" as used in section 58-23-20 "means a return in money or property for transportation of persons or property by motor vehicle over public highways, whether paid, received or realized, and shall specifically include any profit realized on the delivered price of cargo where title or ownership is temporarily vested during transit in the

5

carrier as a subterfuge for the purpose of avoiding regulation under this chapter." S.C.Code Ann. § 58-23-30 (1977).

Id. at 425.

In this case, the parties do not appear to dispute that Defendant Lewis qualifies as a motor vehicle carrier under South Carolina law. After review of the applicable statutes, regulations, and the Bovain case quoted, above, this Court agrees and concludes that Defendant Lewis is a motor carrier, and accordingly is subject to the insurance requirements in Regulation 38-414, absent some applicable exemption. It is at this point that the parties' respective positions diverge. Plaintiff asserts that Defendant Lewis is entitled to the exemption provided in S.C. Code § 58-23-50(6) and Regulation 38-407, as it believes that Defendant Lewis is a lumber hauler who transports lumber from the forest to various shipping points in the state. Defendants Lewis and Cokely disagree and argue that for various reasons, the exemption is inapplicable.[5]

Regulation 38-407 provides for exemptions from the Economic Regulations for certain motor carriers. In particular, Regulation 38-407(4) provides an exemption for qualifying "[l]umber haulers engaged in transporting lumber and logs from the forest to the shipping points in this State." 23A S.C.Code Ann. Regs. 38-407(4) (Supp.2008). Neither the phrase "from the forest" nor the term "shipping points" is defined in the regulation.

The burden of proving the entitlement to an exemption is on the party asserting the exemption. Bovain v. Canal Ins., 678 S.E.2d 422, 427 (S.C. 2009)(citing Ga. Cas. & Sur. Co. v. Jernigan, 305 S.E.2d 611, 614 (1983)). In general, exemptions are an act of legislative grace and, as such, they are

---

[5]Because the court grants the Defendants' motions for summary judgment on the grounds discussed herein, the court declines to address the other arguments raised in support of the Defendants' motions for summary judgment.

6

to be strictly and reasonably construed. Id. See also, State v. Life Ins. Co., 175 S.E.2d 203, 206-07 (1970) (noting exemptions are provided as an act of legislative grace and are to be construed strictly; a party must meet the specified conditions to obtain the benefit conferred by the exemption). The words used in legislation "must be given their plain and ordinary meaning without resort to subtle or forced construction to limit or expand [their] operation." Hitachi Data Sys. Corp. v. Leatherman, 420 S.E.2d 843, 846 (1992); see Owen Indus. Prods., Inc. v. Sharpe, 262 S.E.2d 33, 34 (1980) (stating the general rule that a statutory exemption "must be given its plain, ordinary meaning and must be construed strictly against the claimed exemption"); State v. Hood, 49 S.C.L. (15 Rich.) 177, 185 (1868) ("Every exemption must be couched in such plain and unambiguous language as to satisfy the Court beyond doubt that the Legislature intended to create the exemption. Such a right can never arise by mere implication, and all laws granting the exemption are to be most strictly construed." (citation omitted)).

The South Carolina Supreme Court in the Bovain case, discussed supra, has addressed the exemption found in Regulation 38-407(4) for lumber haulers with specificity as it relates to the phrase "from the forest." Bovain argued that Green, the hauler, did not transport logs "from the forest." Further, Bovain argued the "farm to market" exception was intended to exempt the infrequent transportation of agricultural products to market, not the almost daily transportation of items for profit.

As noted, the Regulation 38-407 provides an exemption for "lumber haulers engaged in transporting lumber and logs from the forest to the shipping points in this State." The South Carolina Supreme Court addressed the phrase "from the forest." This Court addresses the terms "shipping points." This Court has carefully considered the analysis used by the South Carolina Supreme Court

in <u>Bovain</u>, and likewise applies that same approach to analyzing the "shipping points" component of the exemption. In analyzing the phrase, "from the forest," the <u>Bovain</u> Court started by defining the term "forest:"

> As noted by one treatise, "forest" is synonymous with "woods," and in its commonly understood sense, refers to an extensive area of land covered by trees:
>
> > The term "wood" is often used in the plural, with the same force as in the singular, as indicating a large and thick collection of trees. It is synonymous with "forest," and has been so defined, although the latter term is sometimes said to imply a wood of considerable extent. Both terms are broad enough to include not only the trees but the land on which they stand. When referring to land, the term "woods" means forest lands in their natural state, as distinguished from lands cleared and enclosed for cultivation, and "forest" means a tract of land covered with trees, or a tract of woodland with or without enclosed intervals of open and uncultivated ground.
>
> 98 C.J.S. Woods and Forests § 1 (2002) (footnotes omitted).
>
> The Supreme Court of Illinois has also found that "[a] forest is defined as a tract of land covered with trees; a wood, usually of considerable extent." <u>Forest Preserve Dist. v. Jirsa</u>, 336 Ill. 624, 168 N.E. 690, 691 (1929) (alteration in original); <u>see also People v. Long Island R.R. Co.</u>, 126 A.D. 477, 110 N.Y.S. 512, 512 (1908) (stating "[a] forest is defined as being 'a tract of land covered with trees; a wood, usually one of considerable extent; a tract of woodland with or without [e]nclosed intervals of open and uncultivated ground' " (citation omitted)).
>
> <u>Bovain</u>, 678 S.E.2d at 428.

The <u>Bovain</u> Court found these definitions to be persuasive and reached the ultimate conclusion that the "plain meaning of 'forest' is that it commonly refers to an area of land covered with trees, usually of considerable extent." <u>Id</u>. at 428. The Court also noted that because Regulation 38-407 is meant to be a farm-to-market exception, it should apply to areas of usual harvesting, not just small areas where trees can be cut. <u>Id</u>.

Based on the facts of the case in <u>Bovain</u>, which involved a motor carrier who was picking up logs from a worksite beside Interstate 26 with plans to take them a paper mill in Eastover, South

Carolina, and the noted definitions of "forest," the Bovain court concluded that the lumber hauler exemption did not apply as it found no evidence that [the motor carrier at issue] was transporting lumber and logs "from the forest to the shipping points in this State." Id. at 429. The Court noted that:

> A broad interpretation of "forest" as pertaining to any site where trees are cut would eviscerate the language that the exemption applies to those hauling logs "from the forest to the shipping points in this State." We do not believe that is a reasonable and strict construction of all of the pertinent terms of the exemption. **The legislature could have easily used broader language and stated that anyone hauling lumber or logs is exempted if that were its intent**.

Id. at 429. (Emphasis added)

This Court finds the direct, yet insightful and intuitive, approach of the Bovain Court to be both instructive and persuasive. This Court will now apply a similar analysis in the case before it. Although the phrase "shipping point" itself is not defined in Webster's Dictionary or Black's Law Dictionary, both "shipping" and "point" are defined. Some of the more relevant definitions are noted below:

> ship (verb):
> to send (goods, documents, etc.) from one place to another, esp. by delivery to a carrier for transportation.

Black's Law Dictionary (8th ed. 2004).

> ship or shipping (transitive verb):
> to place or receive on board a ship for transportation by water; or to cause to be transported
>
> ship or shipping (intransitive verb):
> to embark on a ship, to go or travel by ship, or to be sent for delivery
>
> shipping (noun):
> passage on a ship; or the act or business of one who ships

9

point (noun):
> a narrowly localized place having a precisely indicated position; or a particular place

Merriam-Webster Online Dictionary (2010), available at http://www.merriam-webster.com/.

After review of the definitions of the individual terms, the Court concludes that the plain and ordinary meaning of a "shipping point" suggests that (I) it is a place of shipment, or (ii) a location where goods are brought to be transported or sent for delivery.

The Court has also considered the word "mill," which is the destination of the lumber being hauled in this case, in conducting its analysis. A mill by definition is "a building or collection of buildings with machinery for manufacturing." Id. This Court is not sufficiently persuaded that a mill is synonymous with a "shipping point." The Plaintiff has the burden to prove entitlement to the exemption. Accordingly, the Court does not find the position of Plaintiff to be sufficiently persuasive and does not conclude that Plaintiff has met its burden of establishing that the lumber hauler exemption outlined in Regulation 38-407 is applicable to the facts of this case.

As noted, supra, Regulation 38-414 provides: "Insurance policies and surety bonds for bodily injury and property damage **will** have limits of liability **not less than**" $750,000 per incident for trucks weighing 10,0000 or more pounds GVWR that carry non-hazardous freight. S.C.Code Ann. Regs. 38-414 (emphasis added). As noted in Bovain:

> The South Carolina Legislature has mandated a level of coverage for larger vehicles in order to protect the public from the increased dangers inherent with their operation on our state's highways. It would be unreasonable to interpret the language of Regulation 38-414 differently from the mandated coverage under the Financial Responsibility Act, as the potential for catastrophic damage is much greater with these larger vehicles. We find insurance carriers have a duty to issue policies in accordance with the mandated minimum levels of coverage and that reformation of the Canal Insurance policy to provide the mandated minimum level of coverage is appropriate.

Bovain, 678 S.E.2d at 429.

Having found that Defendant Lewis qualifies as a motor carrier, and that he does not meet the requirements for exemption as a lumber hauler, this Court concludes that the policy issued by Plaintiff should be reformed because it does not conform to the legal requirements for coverage as mandated by Regulation 38-414. See Bovain v. Canal Ins., 678 S.E.2d 422, 429 (S.C. 2009)(rejecting the argument that reformation is appropriate only for automobile insurance policies, and reforming the insurance policy at issue in accordance with the mandate of Regulation 38-414); see also, Hamrick v. State Farm Mut. Auto. Ins. Co., 241 S.E.2d 548, 549 (1978) ("A policy of insurance issued pursuant to statutory law must at a minimum give the protection therein described. It may give more protection but not less, and a policy issued pursuant to the law which gives less protection will be interpreted by the court as supplying the protection which the legislature intended."); Jordan v. Aetna Cas. & Sur. Co., 214 S.E.2d 818, 820 (1975) (stating while parties are generally permitted to contract as they desire, this freedom is not absolute and insurance coverage required by law may not be omitted because statutory provisions relating to an insurance contract are part of the contract).

## Conclusion

Based on the foregoing, this Court concludes that Defendant Lewis is a motor carrier as defined in the South Carolina Code and that the exemption from the Economic Regulations for lumber haulers is not applicable here. As the Court finds that the insurer has a duty to issue insurance in accordance with the mandate of Regulation 38-414, it concludes that the policy issued by Plaintiff should be reformed to conform to the $750,000 minimum level of coverage required by Regulation 38-414. Accordingly, for the foregoing reasons, the undersigned **GRANTS** Defendants Cokely and Lewis' motions for summary judgment as outlined herein.

**IT IS SO ORDERED.**

s/ Terry L. Wooten
Terry L. Wooten
United States District Court Judge

August 18, 2010
Florence, South Carolina